UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

H-S INTERNATIONAL, INC.                    CIVIL ACTION

VERSUS                                     NO.

ABO VENTURES, INC. AND                     JUDGE:
WILLIAM INGRAM

                                           MAGISTRATE JUDGE:

## VERIFIED COMPLAINT

Plaintiff, H-S International, Inc. ("H-S International"), asserts the following Complaint

against ABO Ventures, Inc. ("ABO Ventures") and William Ingram, alleging as follows:

## PARTIES

1.

Plaintiff H-S International is an Arizona corporation with its principal place of business

in Maricopa County, Arizona.  H-S International is in the business of fulfilling the temporary

personnel requirements of its clients on an as-needed basis.

2.

Defendant ABO Ventures is a Louisiana corporation with its principal place of business

in Metairie, Louisiana.  ABO Ventures is owned and controlled by Defendant William Ingram,

Anthony Scott and Karin Gaston.  Defendant William Ingram is an officer and a Director of

ABO Ventures.

3.

Defendant William Ingram resides in Knob Noster, Missouri.

4.

William Ingram at all times acted as duly authorized agent of ABO Ventures and all acts,

statements and representations made by him were made within the course and scope of his

employment or agency with ABO Ventures.   Mr. Ingram had authority to make the representations and promises he made on behalf of ABO Ventures.

## VENUE

### 5.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332, because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

### 6.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial amount of the events or omissions giving rise to this claim occurred in this judicial district.

## GENERAL ALLEGATIONS

### 7.

In the Spring, Summer and Fall of 2014 Defendant William Ingram and other ABO Ventures agents had a number of telephone calls and in-person meetings with representatives of H-S International.   During those in-person meetings and phone calls Mr. Ingram, as an authorized agent of ABO Ventures, represented to H-S International that ABO Ventures had secured over $500,000,000 in funding and had millions in cash to pay for various solar jobs it wanted to use H-S International employees on so that paying H-S International would never be a problem.

### 8.

For example, Mr. Ingram met with H-S International's National Director, John Picou, in August 2014 in New Orleans, Louisiana.  During this meeting Mr. Ingram represented that ABO Ventures had secured over $500,000,000 in funding for solar projects throughout the United States.   Mr. Ingram stated that this included projects underway in New Orleans, Louisiana;

Defiant, Ohio; Thackerville, Oklahoma; Iowa, Kansas; Phoenix, Arizona; and Kansas City, Missouri.

9.

In October 2014 Mr. Ingram met with Mr. Picou in Iowa, Kansas at one of ABO Ventures purported job sites.  Mr. Ingram represented that he had a solar installation project there with the Iowa tribe valued at over $50,000,000 that was to be constructed by ABO Ventures that he wanted to staff with H-S International employees.  Mr. Ingram represented that he was getting a general contractor fee for the project of ten percent (10%) ($5,000,000) up front prior to the job starting.  This representation was not true.  Upon information and belief Mr. Ingram never started this project nor received the $5 million.

10.

Upon information and belief Mr. Ingram submitted forged contracts to Direct Sun – one of ABO Ventures' funding sources – and obtained approximately $1,500,000 in funding from Direct Sun for projects that ABO Ventures either never had contracts for or never started working on.

11.

Mr. Ingram met with Mr. Picou again in October 2014 in Kansas City, Missouri to discuss the Iowa, Kansas project that Mr. Ingram represented would be staffed with H-S International employees.  During this meeting Mr. Ingram again represented that ABO Ventures had secured over $500,000,000 in funding to pay for the various projects it was involved in that it wanted to staff with H-S International employees.  Mr. Ingram repeatedly represented that his company had large amounts of cash on hand as well as $500,000,000 in funding it had secured for these various projects and that H-S International would always be paid promptly.  These representations were false.

3

12.

In reliance on the representations and promises made by Mr. Ingram and other ABO

Ventures' agents, H-S International and ABO Ventures entered into an Agreement on October

24, 2014.  That Agreement provided, among other things, that H-S International would employ

and pay for the various ABO Ventures' professionals and staff working on ABO Ventures'

projects across the country including, among others:  Billy Ingram, John Hall, John Morrow,

Carol J. Ingram Bryant, and Teandre Ingram.  Mr. Ingram represented that all of these

individuals were actively working full time on ABO Ventures' projects across the country.  H-S

International later learned that these representations were false.

13.

In reliance on Mr. Ingram's representations, H-S International executed the October 24,

2014 Agreement with ABO Ventures.  *See* Exhibit "1."

14.

The Agreement provided that all amounts invoiced by H-S International were due and

payable within fifteen (15) days from date of invoice.  *See* Agreement § 5.03, attached as Exhibit

"1."  The Agreement further provided that the prevailing party in any dispute arising out of the

Agreement shall be awarded their attorneys' fees and costs incurred in enforcing its rights under

the Agreement. *See* Agreement § 5.05.

15.

Pursuant to the Agreement, ABO Ventures employed the individuals that Mr. Ingram

represented would be working on ABO Ventures' various projects and paid their wages and

benefits as employees of H-S International.  Pursuant to the Agreement, ABO Ventures was

invoiced the agreed-upon amount for the H-S International employees that worked on ABO

Ventures' projects.  As of May 1, 2015, the balance owed by Defendants for the temporary

employees provided by H-S International is $286,455, not including late-payment charges, interest or attorneys' fees.

16.

Upon information and belief, Billy Ingram and ABO Ventures used some of the money provided by its funding sources including Direct Sun for Mr. Ingram and his family members' personal use as well as to fund Mr. Ingram's other companies.

17.

Between January and June 2015, Billy Ingram continued to make representations and promises to H-S International agents concerning the large amounts of cash ABO Ventures had on hand and the much larger amount of money that was being funded on its various projects.  Mr. Ingram made these representations and promises to H-S International's agents to continue to induce H-S International to provide temporary employment services (including payment of Mr. Billy Ingram's salary) for the various projects that ABO Ventures was allegedly working on.  H-S International relied on Mr. Ingram's representations and promises and continued to pay wages for Mr. Ingram and for persons Mr. Ingram said were working on ABO Ventures projects.

18.

Despite numerous requests for payment of the $286,455 owed to H-S International, Defendants have refused to pay the balance owed.

### COUNT ONE – ABO VENTURES' BREACH OF CONTRACT

19.

H-S International incorporates and re-alleges the allegations of Paragraphs 1 through 18 of the Complaint.

20.

H-S International entered into a valid and binding contract with ABO Ventures.  *See*
Exhibit "1."

21.

H-S International properly and timely performed all of its obligations under its
Agreement.

22.

ABO Ventures breached the terms of the Agreement by, among other things, failing to
pay H-S International the $286,455 owed as of May 1, 2015.  *See* Exhibit "2," Statement
depicting all invoices sent and the balance owed by ABO Ventures.

23.

As a direct and proximate result of ABO Ventures' breaches, H-S International has been
damaged in the amount of $286,455 plus costs, late fees, and attorneys' fees.

## COUNT TWO – ABO VENTURES' BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

24.

H-S International incorporates and re-alleges the allegations of Paragraph 1 through 23 of
the Complaint.

25.

The covenant of good faith and fair dealing is implied as a matter of law in every
contract.  The covenant imposes a duty to act in good faith and deal fairly with H-S International
at all times, and to refrain undertaking actions designed to deprive it of the benefits of its bargain
under the Agreement.

26.

ABO Ventures breached the covenant of good faith by, among other things, refusing to pay the $286,455 owed to H-S International.

27.

ABO Ventures' actions have been conducted in bad faith, or without legal justification, and have deprived H-S International of the benefit of its bargain under its Agreement.  ABO Ventures' conduct constitutes a material breach of the implied covenant of good faith and fair dealing.

28.

As a direct and proximate result of ABO Ventures' breach, H-S International has been damaged as set forth in the Prayer for Relief.

**COUNT THREE – NEGLIGENT MISREPRESENTATION (ABO VENTURES AND WILLIAM INGRAM)**

29.

H-S International incorporates and re-alleges the allegations of Paragraph 1 through 28 of the Complaint.

30.

Mr. Ingram, individually and acting within the course and scope of his employment with ABO Ventures, supplied H-S International with false information, as described above.

31.

Mr. Ingram, individually and acting within the course and scope of his employment with ABO Ventures, failed to exercise reasonable care or competence in obtaining or communicating information to H-S International, such as representing to H-S International that ABO Ventures had secured over $500,000,000 in solar project funding, had large amounts of cash in its bank

accounts, would receive $5,000,000 at the commencement of the Iowa, Kansas project, would always promptly pay H-S International, and that the employees paid by H-S International were working full time on ABO Ventures projects.

32.

These statements were false and Mr. Ingram misrepresented this false information to H-S International to induce H-S International to enter into the Agreement.

33.

Mr. Ingram, individually and acting within the course and scope of his employment with ABO Ventures, provided the false information to H-S International for its guidance in a business transaction to enter into a written agreement with ABO Ventures.

34.

H-S International justifiably relied on the false information provided by Mr. Ingram.

35.

As a direct and proximate result of Mr. Ingram and ABO Ventures' conduct, H-S International has been damaged as set forth in the Prayer for Relief.

## COUNT FOUR – MISREPRESENTATION (ABO VENTURES AND WILLIAM INGRAM)

36.

H-S International incorporates and re-alleges the allegations of Paragraph 1 through 35 of the Complaint.

37.

Mr. Ingram, individually and acting on behalf of ABO Ventures, represented to Plaintiff, among other things, that it had secured over $500,000,000 in funding, that it would receive $5,000,000 at the commencement of the Iowa, Kansas project, that it had millions of dollars in

cash in its bank accounts, that paying H-S International within fifteen (15) days of receipt of invoices would never be a problem, and that the employees paid by H-S International were working full time on ABO Ventures projects.

38.

Upon information and belief, Mr. Ingram and ABO Ventures lacked any present intent to perform their representations at the time they were made.

39.

Mr. Ingram and ABO Ventures' representations were false, as evidenced by ABO Ventures' repeated inability to pay the invoices sent by H-S International.

40.

Mr. Ingram and ABO Ventures' representations were material to H-S International.  H-S International would not have executed the Agreement had Mr. Ingram and ABO Ventures accurately represented the true financial condition of ABO Ventures and the fact that Mr. Ingram was going to use funding provided by sources such as Direct Sun on projects for another one of Mr. Ingram's business ventures.

41.

Mr. Ingram and ABO Ventures knew, or at least were ignorant as to the truth, of the falsity of the representations, that H-S International would rely, and did in fact rely, on Mr. Ingram and ABO Ventures' fraudulent representations.

42.

Mr. Ingram and ABO Ventures knowingly and intentionally acted to conceal material information from H-S International.

43.

H-S International was unaware of the falsity of Mr. Ingram and ABO Ventures' representations, and H-S International had a right to rely on the representations made.

44.

As a direct and proximate result of Mr. Ingram and ABO Ventures' conduct, H-S International has been damaged as set forth in the Prayer for Relief.

## COUNT FIVE – UNJUST ENRICHMENT (ABO VENTURES AND WILLIAM INGRAM)

45.

H-S International incorporates and re-alleges the allegations of Paragraph 1 through 44 of the Complaint.

46.

ABO Ventures and William Ingram have been unjustly enriched to the impoverishment of H-S International, through ABO Ventures and Mr. Ingram's deceptive conduct, as described herein.

47.

ABO Ventures and Mr. Ingram lack any justification for their deceptive conduct, as described above, and H-S International is without an adequate remedy at law.

48.

As a direct and proximate cause of ABO Ventures and Mr. Ingram's intentional and willful conduct, H-S International has been damaged as set forth in the Prayer for Relief.

## DEMAND FOR JURY

49.

H-S International demands a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, H-S International prays that, after due proceedings had, the

Court enter a judgment in its favor, and against Defendants, ABO Ventures and William Ingram,

and that the following non-exclusive relief be granted:

(a)   Judgment against ABO Ventures, Inc. and William Ingram in the amount of $286,455 plus late fees pursuant to the Agreement;

(b)   Actual, compensatory and consequential damages in an amount to be proven at trial;

(d)   Attorney's fees and costs as provided in the parties' contract;

(e)   Attorney's fees in the amount of $3,500 if default judgment is taken;

(e)   Interest on the foregoing amounts;

(g)   Other damages as provided in law or equity, or as the circumstances of the case may require.

Respectfully submitted,

**ADAMS AND REESE LLP**

By: */s/ L. Cole Callihan*
   **VICTORIA WHITE BAUDIER (#33430)**
   **GREGORY F. ROUCHELL (#28746)**
   **L. COLE CALLIHAN (#33756)**
   4500 One Shell Square
   New Orleans, LA 70139
   Phone: (504) 581-3234
   Fax: (504)586-7931
   Victoria.Baudier@arlaw.com
   Gregory.Rouchell@arlaw.com
   Cole.Callihan@arlaw.com
   *Attorneys for Plaintiff,*
   *H-S International, Inc.*