```
                      UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA


   H-S INTERNATIONAL, INC.                 CIVIL ACTION

   VERSUS                                  NO: 15-3063

   ABO VENTURES, INC. and                  SECTION: "J"(1)
   WILLIAM INGRAM
```

## ORDER & REASONS

Before the Court is a *Motion for Default Judgment Against Defendants ABO Ventures, Inc. and William Ingram* **(Rec. Doc. 20)** filed by Plaintiff, H-S International, Inc. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED** as set forth more fully below.

## FACTS AND PROCEDURAL BACKGROUND

H-S International, Inc. ("H-S") filed this lawsuit against ABO Ventures, Inc. ("ABO") and William Ingram ("Ingram") on July 29, 2015. (Rec. Doc. 1.) In its Complaint, H-S seeks to recover amounts owed pursuant to a written agreement entered into between H-S and ABO, under which H-S supplied personnel to ABO for various solar projects throughout the United States (the "Agreement"). *See id.* at 2-4. At all relevant times, Ingram acted on behalf of ABO as an owner, officer, and director.

The parties reached the Agreement following a number of telephone calls and in-person meetings between H-S and

representatives of ABO, including Ingram. *See id.* During these meetings, Ingram represented to H-S that ABO had secured over $500,000,000.00 in funding and had millions of dollars in cash to pay for various solar jobs, which would be used to pay H-S for its personnel. *See id.* Relying on Ingram's representations and promises, H-S entered into the Agreement on October 24, 2014. *See id.* at 4. Pursuant to the Agreement, H-S employed and paid for various ABO staff and professionals who allegedly were working on ABO's projects. *See id.* ABO was then invoiced for the agreed-upon amount. *Id.* As of May 1, 2015, the balance owed by Defendants for the temporary employees provided by H-S totaled $286,455.00. *See id.* at 5. H-S has been unable to obtain the balance owed from ABO despite numerous requests. *Id.*

H-S effected service on Ingram by personal delivery of the Summons along with the Verified Complaint and Exhibits on September 20, 2015. (Rec. Doc. 6.) Because Ingram failed to file a responsive pleading by October 11, 2015, H-S requested that an entry of default against Ingram be entered by the clerk of court. (Rec. Doc. 7.) An Order for entry of default against Ingram was entered on October 19, 2015. (Rec. Doc. 8.)

H-S effected service on ABO by personal delivery of the Summons along with the Verified Complaint and Exhibits to its registered agent, Lee Mitchell, on November 3, 2015. (Rec. Doc. 14.) Because ABO failed to file a responsive pleading by November

24, 2015, H-S requested that an entry of default against ABO be entered by the clerk of court. (Rec. Doc. 16.) An Order for entry of default against ABO was entered on December 1, 2015. (Rec. Doc. 18.)

On January 5, 2016, H-S filed the instant *Motion for Default Judgment Against Defendants ABO Ventures, Inc. and William Ingram* **(Rec. Doc. 20)**, seeking a default judgment against Defendants pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

Under Rule 55(b) of the Federal Rules of Civil Procedure, a default judgment may be entered against a party when it fails to plead or otherwise respond to the plaintiff's complaint within the required time period. Fed. R. Civ. P. 55(b). A plaintiff who seeks a default judgment against an uncooperative defendant must proceed through two steps. First, the plaintiff must petition the court for the entry of default, which is "a notation of the party's default on the clerk's record of the case." *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 335 (2d Cir. 1986). To obtain an entry of default, the plaintiff must show "by affidavit or otherwise" that the defendant "has failed to plead or otherwise defend" the complaint within the required time period. Fed. R. Civ. P. 55(a). Beyond that requirement, however, the entry of default is largely mechanical. *See United States v. Hansen*, 795 F.2d 35, 37 (7th Cir. 1986) (describing the entry of default as

3

"an intermediate, ministerial, nonjudicial, virtually meaningless docket entry").

After the clerk has entered the default, the plaintiff may move for default judgment. Fed. R. Civ. P. 55(b). When considering whether there is a "sufficient basis in the pleadings" for the entry of a default judgment, the court must accept as true "the well-pleaded factual allegations in the plaintiff's complaint." *Meyer v. Bayles*, 559 F. App'x 312, 313 (5th Cir. 2014) (quoting *Nishimatsu Const. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). However, the defaulting defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206. No party is entitled to a default judgment as a matter of right, even where the defendant is technically in fault. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). The disposition of a motion for the entry of default judgment ultimately rests within the sound discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir.1977).

## DISCUSSION

**A.   Jurisdiction**

Before entering a default judgment, the district court must "look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). Judgment entered in

the absence of jurisdiction is void, and the court must therefore refrain from entering judgment if its jurisdiction is uncertain.

In the instant case, subject matter jurisdiction is premised on diversity of citizenship. Federal courts have subject matter jurisdiction over any civil action where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Here, Plaintiff, an Arizona corporation with its principal place of business in Arizona, alleges that Ingram is a citizen of Missouri and that ABO is a Louisiana corporation with its principal place of business in Metairie, Louisiana. (Rec. Doc. 1, at 1.) Because the amount in controversy exceeds $75,000 and there is complete diversity between Plaintiff and the Defendants, the Court is satisfied that it has subject matter jurisdiction over this case.

This Court also has personal jurisdiction over the Defendants. Federal courts have personal jurisdiction over a nonresident defendant if (1) the forum state's long arm statute permits jurisdiction over that defendant, and (2) the forum state's exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute extends jurisdiction to the limits of due process, the Court's sole focus is on whether exercising jurisdiction in this case comports with federal due process requirements. *See Dickson Marine*

5

*Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing La. Rev. Stat. § 13:3201(B)).

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). A court has specific jurisdiction sufficient to establish minimum contacts when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008). Here, the Court has personal jurisdiction over ABO because it is a resident corporation. The Court likewise has personal jurisdiction over Ingram because he has purposefully availed himself of the benefits and protections of Louisiana by establishing "minimum contacts" with the state, and the exercise of personal jurisdiction over Ingram will not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211. Ingram is alleged to be an owner, director, and officer of ABO, a resident corporation. (Rec. Doc. 1, at 1.) Plaintiff also

alleges that Ingram met with a representative of H-S in New Orleans, Louisiana, in August 2014, during which Ingram made representations over the funding available to ABO and discussed ABO projects underway in New Orleans. *Id.* at 2-3. These representations relate to Plaintiff's claims for breach of contract and misrepresentation. Moreover, Ingram was properly served with process. (Rec. Doc. 6.) Therefore, the Court has personal jurisdiction over both Defendants.

**B.   Entry of Default Judgment**

The record shows that both Defendants were served with process. Ingram was served with process on September 20, 2015. (Rec. Doc. 6.) ABO was served with process on November 3, 2015. (Rec. Doc. 14.) Yet Defendants have failed to plead, and in fact, have made no appearance whatsoever despite the entry of default against them. Although judgments by default are generally disfavored, *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998), the Court finds that Defendants' failure to appear warrants a default judgment against them.

Because "a party in default does not admit mere conclusions of law," it "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2688 (3d ed. 1998). Plaintiff alleges claims

7

for breach of contract and misrepresentation against Defendants under Louisiana law. (Rec. Doc. 1, at 5-10.)

Plaintiff has stated a prima facie claim against ABO for breach of contract. Under Louisiana law, a party to a contract is "liable for the damages caused by his failure to perform a conventional obligation." La. Civ. Code art. 1994. "A failure to pay money due under a contract is a failure to perform in the context of [article 1994]." *Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 494 F. Supp. 2d 401, 416 (M.D. La. 2007) (citing *Whitney Nat. Bank of New Orleans v. Poydras Ctr. Associates*, 557 So. 2d 422, 425-26 (La. Ct. App. 1990)).

Here, Plaintiff alleges that H-S and ABO entered into a valid contract that called for H-S to provide services to ABO, and for ABO to pay for those services within fifteen days of being invoiced for such services. (Rec. Doc. 1, at 4.) Plaintiff alleges that ABO failed to pay numerous invoices under the terms of the contract. Accordingly, the Court finds that Plaintiff has made a prima facie case that ABO is in breach of its obligations under the contract and is liable for its failure to perform.

Plaintiff has also stated a prima facie claim for misrepresentation against Ingram. Fraud is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art.

8

1953. Under Louisiana law, a claim for delictual fraud or intentional misrepresentation of a material fact requires (1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 627 (5th Cir. 1999). Generally, an officer or director of a corporation is not personally liable for the debts or contractual obligations of the corporation, unless the officer or director has engaged in fraud. *See B-G & G Inv'rs VI, L.L.C. v. Thibaut HG Corp.*, 985 So. 2d 837, 842 (La. App. 4 Cir. 2008); *McPhail v. La. Farm Bureau Rice, Inc.*, 419 So. 2d 977, 979 (La. App. 3 Cir. 1982) ("[O]fficers, directors and shareholders of a corporation can become personally liable to those who suffer loss because of fraudulent misrepresentations made by the officers, directors or shareholders on behalf of the corporation.").

Here, Plaintiff alleges that Ingram, individually and acting on behalf of ABO, represented to H-S that ABO had secured over $500,000,000 in funding, that ABO would receive an additional $5,000,000 at the commencement of a project in Kansas, that ABO had millions of dollars in its bank accounts, that paying H-S within fifteen days of receipt of invoices would never be a problem, and that the employees paid by H-S were working full time on ABO projects. (Rec. Doc. 1, at 8-9.) Plaintiff alleges that

these representations were made during August and October of 2014, prior to H-S entering into the Agreement. *Id.* at 2-3.

In addition, Plaintiff alleges that Ingram and ABO lacked any intent to perform their representations at the time they were made. *Id.* at 9. Plaintiff alleges that the representations ultimately proved to be false, as evidenced by ABO's inability to pay the invoices sent by H-S. *Id.* Next, Plaintiff alleges that these representations were material to H-S because H-S would not have executed the Agreement had Ingram and ABO accurately represented ABO's true financial condition. *Id.* Further, Plaintiff alleges that Ingram and ABO knew that H-S would rely on these fraudulent representations, and H-S did in fact rely. *Id.* Lastly, Plaintiff alleges that Ingram and ABO knowingly and intentionally acted to conceal this material information from H-S. *Id.* Plaintiff's reliance on these representations has caused damages in the amount of $286,455. In sum, the Court finds that Ingram misrepresented a material fact with the intent of deceiving Plaintiff, causing justifiable reliance, resulting in injury.

Remaining is the issue of damages. "A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). A default judgment does not, however, establish the amount of damages. *Id.; see also Howard v. Weston*, 354 F. App'x 75, 76 (5th Cir. 2009) ("After a default

10

judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."). "As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing," but the rule "is subject to an exception where the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311.

Here, the Court finds that the amount Defendants owe Plaintiff as a result of the breach of contract is capable of mathematical calculation. A party injured by a breach of contract is entitled to damages measured by the loss sustained and the profit of which the party has been deprived. La. Civ. Code art. 1995. To prove the amount of damages, Plaintiff provided an affidavit of H-S's national director, indicating that, as of May 1, 2015, the balance owed by Defendants for the unpaid invoices totals $286,455. (Rec. Doc. 20-3, at 2.) The affidavit is supported by a copy of ABO's account statement, verifying this sum. *Id.* at 31.

Plaintiff also prays for recovery of prejudgment interest. Under Louisiana law, "[w]hen the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed

11

by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500." La. Civ. Code art. 2000. Here, the Section 5.04 of the Agreement between H-S and ABO provides for interest on all unpaid invoices at the rate of one and a half percent per month, equating to an annual percentage rate of eighteen percent. *Id.* at 6.[1]

Plaintiff also prays for recovery of costs from Defendants, to which the Court finds Plaintiff entitled. Under Rule 54 of the Federal Rules of Civil Procedure, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Plaintiff has attached an affidavit of one of its attorneys, indicating that Plaintiff has incurred costs in the amount of $598.50 for service of process fees incurred in connection with this case. (Rec. Doc. 20-4, at 3.)

In addition to costs, Plaintiff also prays for recovery of reasonable attorney's fees pursuant to Section 5.05 of the Agreement. (Rec. Doc. 20-3, at 6.) In diversity actions such as

---

[1] Section 6.06 of the Agreement contains a choice-of-law provision, stating that the Agreement will be governed by and construed in accordance with Arizona law. However, the Court finds that the result is the same under Arizona law. Under Arizona law, Under Arizona law, "prejudgment interest on a liquidated claim is a matter of right." *AMHS Ins. Co. v. Mut. Ins. Co. of Ariz.*, 258 F.3d 1090, 1103 (9th Cir. 2001). "[P]rejudgment interest begins when the creditor provides to the debtor "sufficient information and supporting data so as to enable the debtor to ascertain the amount owed." *Id.* The rate of interest is set by statute at ten percent per annum, unless a different rate is contracted for in writing. Ariz. Rev. Stat. § 44-1201. Thus, H-S is entitled to eighteen percent prejudgment interest under Arizona law as well, because H-S and ABO contractually agreed in writing to this interest rate.

this, state law controls both the award of and the reasonableness of attorney's fees awarded. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). "[A]s a general rule attorney fees are not allowed except when authorized by statute or contract." *Killebrew v. Abbott Labs.*, 359 So. 2d 1275, 1278 (La. 1978).

In assessing the reasonableness of attorney's fees, ten factors are taken into account. *See State, Dep't of Transp. & Dev. v. Williamson*, 597 So. 2d 439, 442 (La. 1992). These factors are (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. *Id.* These factors are derived from Rule 1.5(a) of the Louisiana Rules of Professional Conduct. *Id.* at 442 n.9. The *Williamson* factors are permissive and consideration of all of them is not necessary in every case. *Cf. Fourchon Docks, Inc. v. Milchem Inc.*, 849 F.2d 1561, 1568 (5th Cir. 1988). The reasonableness of a particular fee is determined by the facts of an individual case. *Gottsegen v. Diagnostic Imaging Servs.*, 672 So. 2d 940, 943 (La. App. 5 Cir. 1996). Parties are not entitled to collect a fee that is "clearly excessive." *Nat'l Info. Servs., Inc. v. Gottsegen*, 737 So. 2d 909, 919 (La. App. 5 Cir. 1999).

Plaintiff seeks $30,537 in attorney's fees. This total includes fees for one attorney: Brian J. Foster, a partner at Snell & Wilmer L.L.P. in Phoenix, Arizona, who billed at an hourly rate of $585. (Rec. Doc. 20-4, at 3.) In accordance with Local Rule 54.2, Plaintiff submits the affidavit of Brian Foster, as well as an itemized fee and cost report, as evidence of the attorney's fees and costs that Plaintiff incurred. *Id.* at 1-8. These documents indicate that Foster expended 52.2 hours at his hourly rate of $585 to equal a total amount of $30,537 in attorney's fees. *Id.* Foster's affidavit states that he has practiced commercial litigation at Snell & Wilmer since August 1988, and he focuses on business commercial litigation. *Id.* at 2. Foster states that his rate of $585 per hour is his standard rate and is representative of the typical hourly rates that would be charged by a lawyer with similar experience and credentials in a similar matter. *Id*.

Having reviewed the most recent case law in this district, the Court finds that Foster's $585 hourly rate is unreasonable in this local market and must be reduced. "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Here, Plaintiff has provided no evidence other than its attorney's own

14

affidavits that the requested rate of $585 per hour is reasonable in relation to prevailing local standards. Especially given the relatively straightforward nature of this breach of contract case, the rate charged by Snell & Wilmer is higher than what is customary in our local legal market. In *Oreck Direct, LLC v. Dyson, Inc.*, for example, the court found that "the top rate for partner-level attorneys here is between $400 and $450 per hour." No. 07-2744, 2009 WL 1649503, at *4 (E.D. La. June 8, 2009) (reducing out-of-town partner's hourly rate from $765 per hour to $400 per hour); *see also Receivables Exch., LLC v. Advanced Tech. Servs., Inc.*, No. 14-668, 2015 WL 2372434, at *5 (E.D. La. May 18, 2015) (approving hourly rate of $340 for partner with 23 years of experience); *DirecTV, LLC v. Ertem*, No. 13-487, 2015 WL 459398, at *3 (E.D. La. Feb. 3, 2015) (approving hourly rate of $350 for partners with 20 and 25 years of experience); *Constr. S., Inc. v. Jenkins*, No. 11-1201, 2011 WL 3882271, at *2 (E.D. La. July 29, 2011) (reducing hourly rate of partner with 30 years of experience from $400 to $350); *Ranger Steel Servs., LP v. Orleans Materials & Equip., Co.*, No. 10-112, 2010 WL 3488236, at *3 (E.D. La. Aug. 27, 2010) (reducing out-of-town partner's hourly rate from $475 to $395). Given this precedent, the Court finds that a reasonable hourly rate for Mr. Foster, with his twenty-seven years of experience and expertise, is $450 per hour.

The Court must next determine whether the number of hours that counsel expended on the litigation was reasonable. Plaintiff seeks to recover 52.2 hours of attorney time for Foster. The instant case involved the collection of money owed pursuant to a contractual agreement. Plaintiff filed the complaint against ABO and Ingram on July 29, 2015. The summons for both Defendants were issued on July 30, 2015, and the summons for Ingram was returned executed on September 30, 2015. The summons for ABO did not return executed and had to be reissued. On November 4, 2015, the summons for ABO was returned executed. After the Defendants did not file responsive pleadings, Plaintiff filed motions for the entry of default on October 15, 2015, and November 30, 2015, which were granted. On January 5, 2016, Plaintiff filed the instant motion for default judgment.

Attorneys must exercise "billing judgment" by excluding time that is unproductive, excessive, duplicative, or inadequately documented when seeking fee awards. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). The fee seeker's attorneys "are charged with proving that they exercised billing judgment." *Id.* at 770. Specifically, the party seeking the award must show all hours actually expended on the case but not included in the fee request. *Leroy v. City of Houston*, 831 F.2d 576, 585 (5th Cir. 1987). The proper remedy when there is no evidence of

16

billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment. *Id.*

Having reviewed the billing statement, the Court finds that the hours awarded must be reduced by ten percent to substitute for the exercise of billing judgment. Foster states that, in preparing the billing statement, he "excluded or reduced certain additional charges and other time entries that could arguably be deemed duplicative or excessive, as well as some charges and time entries by other attorneys who have worked on and assisted with this matter." (Rec. Doc. 20-4, at 2.) However, there is no evidence of any such hours expended but not billed. Thus, the attorney seeking the award has failed to prove that he exercised billing judgment. *See Walker*, 99 F.3d at 769 *(*"[T]here is no record of any such billing judgment, as the plaintiffs allege that they wrote off hours before recording them.").

In addition, several entries in the billing statement consist of work that is either excessive, redundant, inadequately documented, or administrative in nature. For example, the billing statement indicates that a portion of a 3.7 hour entry was spent preparing the complaint, summons, and civil cover sheet. (Rec. Doc. 20-4, at 6.) These acts are administrative in nature and should not be included in the award. *See, e.g.*, *Receivables Exch., LLC*, 2015 WL 2372434, at *7 ("As for the 0.8 hours used toward preparing the complaint for filing, preparing the civil cover

17

sheet, and issuing the summons, the Court finds these acts are administrative in nature and will be disallowed."). The billing statement also includes time spent working on a lawsuit in state court, working on claims against Ingram's family members, and work related to the instant request for attorney's fees. Because these entries are related to issues that Plaintiff did not pursue in this Court or are otherwise not compensable, they should not be included in the award.  *See Walker*, 99 F.3d at 769 ("[P]laintiffs do not have the right to bill for inadequately documented time or for time on issues on which they do not prevail. Plaintiffs cannot have prevailed on issues they did not pursue." (footnote and citation omitted)). From a review of the record, the Court has decided that a reduction of ten percent is appropriate, reducing the hours worked from 52.2 to 46.98. Therefore, the Court awards a total of 46.98 hours for work performed at an hourly rate of $450, for a total of $21,141.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Default Judgment Against Defendants ABO Ventures, Inc. and William Ingram* **(Rec. Doc. 20)** is **GRANTED** in the amount of $286,455, prejudgment interest at the rate of eighteen percent per annum, postjudgment interest from the date of judgment until paid, costs in the amount

of $598.50, and reasonable attorney's fees in the amount of $21,141.

New Orleans, Louisiana, this 12th day of February, 2016.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE